## BLAIN v. STEWART.

Under the act entitled, "An act to prevent frauds," approved January 16, 1840 (Rev. Stat. 1843, 271), a judgment was a lien on an equitable interest in real estate.

Section thirty-one of the act of 1840, entitled "An act to regulate conveyances," makes a deed valid between the parties, and such as have actual

notice thereof. The want of the acknowledgment, or of the proof which may authorize the admission of the deed to record, does not invalidate the deed as between the grantor and grantee, and is good as to all persons who are charged with such notice.

The acknowledgment and record of the deed, are provisions which the law makes for the security of creditors and purchasers—they are not essential to the validity of the deed as to the grantor.

Where in an action of right, the plaintiff claimed title to the premises under a deed from one I., dated March 13, 1853, and where the defendant claimed title under a judgment in tho District Court against W. and R., rendered October 26, 1841, a sale of the premises on execution, as the property of W., and a sheriff's deed, dated May 6, 1843, and showed by the testimony of W., that he purchased the premises of I.; that I. conveyed to him by warranty deed; and that W. afterwards (March 31, 1842) conveyed to B., T. & B., of St. Louis, of which firm the plaintiff was a partner, and delivered to their agent, the deed from I. to himself, to be placed upon record; and where the defendant further proved by I., that he sold the premises to W. about the year 1841 or 1842, and thinks that he conveyed the same by deed; that witness afterwards, at the request of B., T. & B., took up the deed he had made to W.—the same never having been recorded—and made a deed directly to B., T. & B., dated February 25, 1843; that the deed to W. is lost, or was destroyed by the witness, and never was upon record; and that in March, 1853, he executed the deed given in evidence by plaintiff; and where the plaintiff, to rebut this testimony, gave in evidence the deed from W. to B., T. & B., dated March 31, 1842, and the deed from I. to them, dated February, 25, 1843, and proved that B., T. & B. obtained the deed from I. directly to themselves, to save circuity of title through W., and that in the spring of 1853, the plaintiff finding a defect in the acknowledgment of the deed from I. to B., T. & B., and being the survivor of the partnership, which had been dissolved, procured from I. the deed, dated March 13, 1853, to be made directly to himself; and where upon this state of evidence, the court instructed the jury, that the plaintiff was entitled to recover, unless the title of defendant founded on the judgment against W. & R. related back to the date of the judgment, October 26, 1841; and that before it could so relate back, they must find that W. had a deed from I. conveying to him the legal title to the premises in controversy, for a valuable consideration, duly executed and acknowledged, at or before the date of said judgment; *Held*, That the court erred in requiring the defendant to show that the deed from I. to W. had been acknowledged.

### Appeal from the Des Moines District Court.

THIS is an action of right brought by Blain, to recover of Stewart the south half of lot 212 in Burlington. Thomas M. Isett purchased the lot of the United States, February 3d, 1841, and on the 13th March, 1853, conveyed the south

half of the same to the plaintiff. The defendant had been several years in possession of the premises, at the time of the commencement of the suit. The plaintiff having shown these facts on the trial, rested his case. The defendant claims title under a judgment in the District Court of Des Moines county, in favor of Hood & Abbott, against Webber & Remey, rendered October 26th, 1841. On an execution issued on this judgment, the sheriff sold the half lot in controversy, as the property of Webber, and defendant became the purchaser and received a sheriff's deed, May 6th, 1843. The defendant shows by the testimony of Webber, that he (Webber) purchased the half lot of Isett, paying him therefor " a horse, saddle, and bridle"—and that Isett conveyed to him by warranty deed. Webber afterwards (March 31st, 1842) conveyed the premises to Blain, Tomkins & Barrett, of St. Louis, and delivered to their agent and attorney, the deed to himself from Isett, to be placed upon record. Isett deposes that he sold the premises in dispute to Webber, " about the year 1841 or 1842," and thinks that he conveyed the same by deed; that he afterwards, at the request of Blain, Tomkins & Barrett, by their attorney, took up the deed he had made to Webber, the same never having been recorded, and made a deed directly to Blain, Tomkins & Barrett, dated February 25th, 1843. The deed to Webber is lost, or was destroyed by Isett, and never was on record. His deposition further shows, that on March 13th, 1853, he executed the deed given in evidence by plaintiff, who was one of the partnership firm of Blain, Tomkins & Barrett.

The plaintiff, as rebutting testimony, gave, in evidence, the deed from Webber to Blain, Tomkins & Barrett, dated March 31st, 1842, and the deed from Isett·to them, dated February 25th, 1843. It further appeared, that Blain, Tomkins & Barrett, obtained the deed from Isett directly to themselves to save circuity of title through Webber, and that in the spring of 1853, the plaintiff finding a defect in the acknowledgment of the deed from Isett to Blain, Tomkins & Barrett, and being the survivor of the partnership firm, which had been dissolved, procured from Isett the deed,

dated March 13th, 1853, to be made directly to himself. Upon this state of evidence, the District Court instructed the jury that the plaintiff was entitled to recover, unless the title of defendant, founded on the judgment of Hood & Abbott against Webber & Remey, related back to the date of the judgment, October 26th, 1841 ; and that before it could so relate back, they must find that Webber had a deed from Isett, conveying to him the legal title to the premises in controversy, for a valuable consideration, duly executed, and acknowledged, at or before the date of said judgment ; and that if Webber's deed was executed subsequent to the date of the judgment, then the judgment could be no lien in law, so as to take the property from the defendant. The court further charged the jury, that if Webber's deed from Isett was duly executed and acknowledged, but never placed upon record, still, before the judgment could operate as a lien against plaintiff, they must find that the plaintiff had notice of such unrecorded deed, in the possession of Webber. The jury found a verdict for the plaintiff, and the defendant has appealed, and assigns for error, the instructions given to the jury by the court.

*Browning & Tracey*, for the appellant.

*Starr & Phelps*, for the appellee.

STOCKTON, J.—The errors assigned in this cause, question the correctness of the instructions to the jury in the court below. The first question presented for our decision is, whether, under the act of January 16th, 1840 (Session Acts, 76), the judgment was a lien on an equitable interest in real estate. On this point, it is sufficient for us to refer to the act of January 19th, 1839 (Laws of Iowa, 74), concerning the construction of statutes. Under the ninth clause of the fifth section of that act, the term "real estate" must be construed "to include lands, tenements, and hereditaments, and all rights thereto, and interest therein." We infer from

this language, that the judgment was made a lien on equitable, as well as legal, interests in real estate. We are confirmed in this view, by the action of the legislature, in the act of January 19th, 1846 (Session Acts, 33), which declares that no judgment in the District Court, "shall be a lien on the equitable interest of the defendant in real estate, unless said equitable interest appears of record in the county wherein said real estate is situated." This act, from the time of taking effect, confined the lien of the judgment to the legal interest, and such equitable interest as should appear of record in the county. The question as to the lien of the judgment on after acquired lands, has been settled by the decision of this court, in the case of *Harrington* v. *Sharpe*, 1 G. Greene, 131, and in the case of *Woods* v. *Mains*, 1 G. Greene, 275.

The only other question for us to decide is, whether the court below erred in instructing the jury, that before the title of the defendant, Stewart, could relate back to the date of the judgment of Hood & Abbott, against Webber & Remey, or be regarded as a better title than that of the plaintiff, they must find that Webber had a deed from Isett, conveying to him the legal title to the premises in dispute, for a valuable consideration, duly executed and acknowledged, at or before the date of said judgment. We are of opinion, that this instruction of the court, based as it was on the proposition that the deed from Isett to Webber, was invalid unless acknowledged, went too far, and required too much of the defendant. The deed may have been perfect in all its parts, and may have passed the complete legal title to Webber, without being acknowledged. It was certainly necessary for the defendant, in order to make out his case, to show a conveyance from Isett to Webber, of such title to the premises in dispute, as that the judgment under which he claims, should be a lien upon it; and if the deed was not recorded, as the law requires, it was further necessary that he should charge the defendant with notice of such unrecorded deed. But when the defendant has done this much, he has done all that the law requires of him. The acknowledgment was

only necessary to admit the deed to record, and the only ef-
fect of recording, is to dispense with notice to the plaintiff.
The statute of Iowa (act of 1840, § 31), makes the deed valid
between the parties, and such as have actual notice thereof.
The want of the acknowledgment, or of the proof which may
authorize the admission of the deed to record, does not in-
validate the deed as between the grantor and grantee ; and
it is good as to all persons who are charged with such notice.
The acknowledgment and recording of the deed, are provis-
ions which the law makes for the security of creditors and
purchasers.    They are not essential to the validity of the
deed, as to the grantor.    *Lessee of Sicard* v. *Davis, &c.*, 6
Peters, 135.

We can, therefore, come to no other conclusion, than that
the District Court erred in requiring the defendant to show
that the deed from Isett to Webber, had been acknowledged.
A conveyance from Isett was valid, and passed the legal title
to Webber, without acknowledgment. Isett may have parted
with all his interest, and the same may have become wholly
and completely vested in Webber, without an acknowledg-
ment of the deed.    It is, however, contended by the counsel
for plaintiff, that the judgment of the District Court should
not be reversed, even if there was error in the instruction of
the court, as to the acknowledgment of the deed, because that
point was immaterial, and if the instruction of the court had
been to the effect that the deed was valid without acknowl-
edgment, the verdict of the jury must still have been the
same.    It is true, that a judgment will not be reversed for an
erroneous instruction by the court below, on an immaterial
point.    But we cannot undertake to say, that the question
was immaterial to the issue of the cause, nor that the verdict
of the jury might not have been different, had the proper
effect been given by the instructions of the court, to the un-
acknowledged deed.    The burden of proof lay on the de-
fendant, to show a title or interest in the premises in Webber,
on which the judgment was a lien.    Isett is the only witness
whose testimony goes to this point, and he says that the sale
to Webber was " about the year 1841 or 1842."    The ques-

tion of time was, therefore, one for the jury to decide, and we cannot say that they might not have found from this evidence, that Webber had an interest in the premises on which the judgment was a lien at the time of its rendition; nor, if they had so found, that it would have been the duty of the court to disturb the verdict.

The judgment is reversed.